**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS SEBASTIAN, | : | |
|     Petitioner | : | No. 1:23-cv-01425 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| ADAMS COUNTY DISTRICT | : | |
| ATTORNEY, <u>et</u> <u>al.</u>, | : | |
|     Respondents | : | |

**<u>MEMORANDUM</u>**

Presently before the Court is pro se Petitioner Carlos Sebastian ("Sebastian")'s petition

for a writ of habeas corpus under 28 U.S.C. § 2254 and three motions to "compel compliance" in

which he seeks to have the Court resolve his habeas petition.  For the reasons stated below, the

Court will deny the petition, decline to issue a certificate of appealability, deny the motions to

compel compliance as moot, and direct the Clerk of Court to close this case.

I.      **BACKGROUND**

After a trial on June 6, 2019, a jury sitting in the Court of Common Pleas of Adams

County ("CCP") convicted Sebastian of rape of a child (18 Pa. C.S. § 3121(c)), involuntary

deviate sexual intercourse ("IDSI") with a child (18 Pa. C.S. § 3123(b)), IDSI with a person less

than sixteen years of age (18 Pa. C.S. § 3123(a)(7)), statutory sexual assault (18 Pa. C.S. §

3122.1(b)), unlawful contact with a minor (18 Pa. C.S. § 6318(a)(1)), and corruption of a minor

(18 Pa. C.S. § 6301(a)(1)(ii)).  <u>See</u> (Doc. Nos. 1 at 6; 15-10; 15-16); Docket, <u>Commonwealth v.</u>

<u>Sebastian</u>, No. CP-01-CR-0000264-2019 (Adams Cnty. Ct. Com. Pl. <u>filed</u> Mar. 7, 2019) ("CCP

Dkt."); <u>Commonwealth v. Sebastian</u>, No. 1962 MDA 2019, 2020 WL 6059833, at *1 (Pa. Super.

Ct. Oct. 14, 2020) (unpublished) ("<u>Sebastian I</u>"); <u>Commonwealth v. Sebastian</u>, No. 528 MDA

2022, 2022 WL 17975378, at *1 (Pa. Super. Ct. Dec. 28, 2022) (unpublished) ("Sebastian II").[1]

During Sebastian's jury trial, the following facts were introduced in support of his criminal

convictions:

> Minor Victim N.M.F. ([h]ereinafter[,] "Minor Victim") testified she is 15 years old, her birthday is December 5, 2003, and during the timeframe in question she lived at her mother's residence at 8 East George Street in New Oxford, Adam's [sic] County, Pennsylvania, with her mother, two brothers, and her step-father, [Sebastian].

> Minor Victim testified that she and [Sebastian] are not married and [Sebastian] sexually assaulted her on numerous occasions, beginning when she was 11 years old and ending when she was 13 years old. The sexual assaults included both vaginal intercourse and oral sex. The first sexual assault occurred when Minor Victim was 11 and . . . was watching television in the room she shared with her mother and [Sebastian]. [Sebastian] rubbed Minor Victim's shoulders and asked her to go downstairs with him. Minor Victim followed [Sebastian] to the living room. Minor Victim testified [she and Sebastian] had sex on the living room couch. Minor Victim testified [Sebastian] took his and Minor Victim's clothes off and [Sebastian]'s penis touched the inside of her vagina. Minor Victim testified the sex lasted longer than a minute and ended when [Sebastian] ejaculated.

> Minor Victim testified [Sebastian] had vaginal intercourse with her multiple times in several different locations throughout the house, including the living room, older brother's room, and in the bedroom she shared with her little brother, mother, and [Sebastian]. Minor Victim testified [Sebastian] had sex with her on the living room couch more than ten times, on the couch in her brother's room more than ten times, and in the shared bedroom more than ten times. Minor Victim testified the last time [Sebastian] sexually abused her was when she was 13 years old and it occurred in her older brother's room. Minor Victim testified she was in the living room when [Sebastian] motioned for her to follow him up the stairs. Minor Victim went upstairs and [Sebastian] engaged in oral sex with Minor Victim by putting his mouth and tongue in her vaginal area. Minor Victim testified [she and Sebastian] had engaged in oral sex over twenty times prior to this last occurrence. Minor Victim testified [Sebastian] would give her money after engaging in sexual acts

---

[1] The Court takes judicial notice of the docket for Sebastian's underlying criminal case, which is available on the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch). See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). A copy of the docket sheet for Sebastian's criminal case is also attached as an exhibit to Respondents' response to Sebastian's habeas petition. See (Doc. No. 15-35 at 5–39).

> with her, ranging from five to twenty dollars, and [Sebastian] would permit her to go places, like a friend's house, in exchange for the sexual acts.

See (Doc. No. 15-43 at 1–3 (internal footnotes omitted)); see also Sebastian I, 2020 WL 6059833, at *1 (quoting Trial Ct. Op., Jan. 3, 2020, at 1–2).

On August 22, 2019, the CCP held a sentencing hearing during which it sentenced Sebastian to (1) a period of state incarceration for a minimum of ten years to a maximum of twenty years for rape of a child, (2) a consecutive period of state incarceration for a minimum of eight years to a maximum of sixteen years for IDSI with a child, (3) a concurrent period of state incarceration for a minimum of eight years to a maximum of sixteen years for IDSI with a person less than sixteen years of age, and (4) a consecutive period of three years of state probation. See (Doc. No. 15-28 at 2); Sebastian I, 2020 WL 6059833 at *1 & n.2; CCP Dkt.[2]  Overall, the CCP sentenced Sebastian to an aggregate period of state incarceration for a minimum of eighteen years to a maximum of thirty-six years, to be followed by three years' state probation. See (Doc. No. 15-28 at 2); Sebastian I, 2020 WL 6059833, at *1; CCP Dkt.[3]

Following his sentencing, Sebastian timely filed post-sentence motions, which he later supplemented. See (Doc. Nos. 15-32, 15-36); Sebastian I, 2020 WL 6059833, at *1.  On November 19, 2019, the CCP granted Sebastian's post-sentence motions to the extent he argued

---

[2]  New defense counsel entered their appearance for Sebastian after his jury convictions but prior to his sentencing.  See Sebastian I, 2022 WL 17975378, at *1; CCP Dkt.

[3]  Prior to sentencing, the Commonwealth filed a notice of its intent to classify Sebastian as a sexually violent predator ("SVP").  See (Doc. No. 15-24 at 1).  In its Sentencing Order, the CCP indicated that the Pennsylvania Sexual Offenders Assessment Board recommended that the CCP designate Sebastian as an SVP.  See (Doc. No. 15-28 at 3).  However, because the CCP concluded that "the current statute dealing with this issue is unconstitutional" pursuant to the Pennsylvania Supreme Court's decision in Commonwealth v. Butler, 226 A.3d 972, 981 (Pa. 2020), the CCP did not conduct a hearing to determine whether Sebastian was an SVP.  See (id. at 4).

that his two IDSI convictions should have merged for sentencing purposes and denied the

remainder of his motions for post-sentence relief.  See (Doc. Nos. 15-37; 15-38); Sebastian I,

2020 WL 6059833, at *1 & n.3; CCP Dkt.[4]

Sebastian then filed a timely notice of appeal to the Pennsylvania Superior Court in

which he ultimately raised six claims:

[1.]  Whether the evidence was insufficient as a matter of law to sustain the guilty verdicts of rape of a child and the other sexual offenses for several reasons, including that the [Minor Victim]'s testimony was inherently unreliable, contradictory, conflicting[,] and at odds with the physical evidence such that guilty verdicts based upon it can amount to no more than surmise and conjecture?

[2.]  Whether the jury's guilty verdicts for rape of a child and the other sexual offenses were against the weight of the evidence and were shocking to the judicial conscience for several reasons, including that the [Minor Victim]'s testimony was inherently unreliable, contradictory, conflicting[,] and at odds with the physical evidence such that guilty verdicts based upon it can amount to no more than surmise and conjecture?

[3.]  Whether the trial court abused its discretion and erred by sustaining the prosecutor's objection to the answer of the [Minor Victim]'s mother in which she characterized [the Minor Victim] as a liar, which negative reputation evidence in the community was highly relevant and admissible (and trial counsel failed to develop this testimony and offer proof thereof at trial and the trial court erred in refusing to consider this ineffectiveness claim on the merits)?

[4.]  Whether trial counsel was ineffective for failing to establish and exploit contradictions in the [Minor Victim]'s testimony at trial and the trial court erred in refusing to consider this ineffectiveness claim on the merits?

[5.]  Whether the[] trial court abused its discretion and erred by sustaining the prosecutor's objection to the answer of [Sebastian] when he was asked to explain his disciplining the [Minor Victim] (and further to the extent that this issue was not adequately addressed by trial counsel, trial counsel was ineffective and the trial court erred in refusing to consider this claim on the merits)?

---

[4]  The CCP's decision did not affect Sebastian's aggregate sentence.

[6.]     Whether the sentencing court abused its discretion and imposed a manifestly excessive sentence and too harsh a punishment by sentencing [Sebastian] to an aggregate sentence of 18 to 36 years of imprisonment despite the fact that the Commonwealth itself (and the defense) had asked that the court impose only the 10-year mandatory minimum sentence for rape of child, which recommendation the court wrongly disregarded?

See (Doc. No. 15-2 at 17–18 (use of all-capitalization omitted)); Sebastian I, 2020 WL 6059833, at *2 (quoting Appellant's Br. at 10–11).  On October 14, 2020, the Superior Court issued an unpublished decision in which it rejected Sebastian's claims and affirmed his criminal judgment. See (Doc. No. 15-31 at 7–19); Sebastian I, 2020 WL 6059833, at *2–9.  Sebastian did not seek further review by the Pennsylvania Supreme Court.  See (Doc. No. 15-31 at 2 (citation omitted)); Sebastian II, 2022 WL 17975378, at *1 (citation omitted).

On March 19, 2021, Sebastian timely filed a counseled first petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA").  See (Doc. No. 15-5); Sebastian II, 2022 WL 17975378, at *1; CCP Dkt.  He argued that his trial counsel was ineffective for failing to attack the Minor Victim's credibility by (1) introducing evidence of her reputation for untruthfulness, (2) "introduc[ing] and exploit[ing] material inconsistencies in her testimony at trial," and (3) introducing evidence of the Minor Victim's "animosity toward [him] because of his discovery from her cell phone of her improper relationship with another young man and the resultant disciplinary measures taken against her by [him] and her mother."  See (Doc. No. 15-5 at 6–26 (cleaned up)).  He also argued that "the individual and cumulative effects of trial counsel's failures to attack the credibility of the [Minor Victim] warrant[ed] a new trial."  See (id. at 27–28 (cleaned up)).

The CCP held an evidentiary hearing on Sebastian's PCRA petition on September 16, 2021.  See (Doc. No. 15-9); Sebastian II, 2022 WL 17975378, at *1 (citation omitted).  On March 2, 2022, the CCP issued an opinion and order denying Sebastian's PCRA petition.  See

(Doc. Nos. 15-15; 15-17; 15-27; 15-29); Sebastian II, 2022 WL 17975378, at *1.  Sebastian then timely appealed from the CCP's decision denying his PCRA petition to the Superior Court.  See (Doc. Nos. 15-19, 15-25); Sebastian II, 2022 WL 17975378, at *1.[5]  On appeal, Sebastian presented the following issues for the Superior Court's review:

> A. Whether [his trial counsel] was ineffective under the state and federal constitutions for failing to attack the [Minor Victim's] credibility by introducing the available and compelling evidence of her reputation in the general community for untruthfulness.
>
> B. Whether [his trial counsel] was ineffective under the state and federal constitutions for failing to attack the [Minor Victim's] credibility by introducing and exploiting the several and compelling material inconsistencies in her trial testimony?
>
> C. Whether [his trial counsel] was ineffective under the state and federal constitutions for failing to attack the [Minor Victim's] credibility by introducing the significant and compelling evidence of her animosity toward [him], particularly emanating from [his] discovery of an inappropriate sexual relationship with a young man?
>
> D. Whether the cumulative effect of [his trial counsel's] constitutional deficiencies in her representation, taken individually and collectively, deprived him of his state and federal right to the effective assistance of counsel as well as his state and federal right to a fair trial?

See Sebastian II, 2022 WL 17975378, at *2 (quoting Appellant's Br. at 4–5).

The Superior Court rejected Sebastian's claims and affirmed the CCP's denial of his PCRA petition via an unpublished decision issued on December 28, 2022.  See id. at *1, 10. Thereafter, Sebastian filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on June 20, 2023.  See (Doc. No. 15-33 at 1).  It does not appear that Sebastian sought further discretionary relief by filing a petition for certiorari with the United States Supreme Court.

---

[5]  In addition to Sebastian's counsel filing a notice of appeal (Doc. No. 15-25), Sebastian filed a pro se notice of appeal (Doc. No. 15-19).

Following his unsuccessful attempts to overturn his convictions in the state courts, Sebastian commenced the instant action by filing the instant Section 2254 petition on August 20, 2023.  See (Doc. No. 1).[6]  In his petition, Sebastian argues that his trial counsel was ineffective because she failed to: (1) "properly attack the credibility of the [Minor Victim] with reputation testimony which would have established that the [Minor Victim] had a reputation for untruthfulness in the community . . ." by "prepar[ing] the [Minor Victim's] mother on how she was to testify to meet the . . . criteria under [Pennsylvania Rule of Evidence] 608(a)," see (id. at 7–10, 16);[7] (2) "cross[-]examine the [Minor Victim] on several compelling inconsistencies between her original statements to the police and the testimony she ultimately provided in the trial," see (id. at 10–12, 16); and (3) "attack the [Minor Victim] with [her] prior history of . . . animosity toward [him] for . . . exposing [her] on her inappropriate cellphone activity," see (id. at 12–14, 16).  Sebastian also argues that even if counsel's errors were not individually sufficiently prejudicial, they were collectively sufficiently harmful to constitute ineffective assistance of counsel and deprive him of a fair trial.  See (id. at 17).

When he filed the instant Section 2254 petition, Sebastian neither remitted the filing fee nor sought leave to proceed in forma pauperis.  Thus, an Administrative Order issued on August

---

[6]  The federal "prisoner mailbox rule" provides that a pro se prisoner's habeas petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Here, Sebastian included a declaration that he placed his motion in the prison mail system on August 20, 2023.  See (Doc. No. 1 at 18).  As such, the Court uses August 20, 2023, as the petition's filing date, even though the Clerk of Court did not docket it until August 25, 2023.

[7]  Pennsylvania Rule of Evidence 608(a) addresses the admissibility of reputation evidence.  See Pa. R. Evid. 608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.  Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.").

25, 2023, requiring Sebastian to either remit the fee or file an application for leave to proceed in forma pauperis within thirty days or risk the Court dismissing this action without prejudice. See (Doc. No. 3). Sebastian did not comply with the Administrative Order, resulting in the Court issuing an Order on October 3, 2023 which dismissed this action without prejudice due to his failure to pay the fee or seek leave to proceed in forma pauperis and directed the Clerk of Court to close this case. See (Doc. No. 4).

On October 20, 2023, and October 23, 2023, Sebastian paid the filing fee and filed a motion to reopen this case, respectively. See (Doc. Nos. 5, 6). The Court granted Sebastian's motion to reopen and directed the Clerk of Court to reopen this case on November 13, 2023. See (Doc. No. 7). On the same date, the Court issued an Administrative Order with Notice of Limitations on Filing of Future Petitions Under 28 U.S.C. § 2254, which required Sebastian to sign and return a notice of election indicating whether he wanted to withdraw his current petition or have the Court rule on his petition as filed. See (Doc. No. 8). Sebastian timely filed a notice stating that he wished to have the Court rule on his petition as filed, which the Clerk of Court docketed on November 24, 2023. See (Doc. No. 10).

The Court issued an Order on November 30, 2023, which, inter alia, required Respondents to file an answer to Sebastian's habeas petition. See (Doc. No. 11). After receiving an extension of time, Respondents filed their response to the petition on March 15, 2024 (Doc. No. 14), and they filed the relevant state-court record on March 25, 2024 (Doc. No. 15). Sebastian did not file a reply brief in further support of his habeas petition; however, over the past six months, he filed three motions to "compel compliance" in which he seeks to compel the Court's resolution of his habeas petition. See (Doc. Nos. 17–19).

## II.    LEGAL STANDARDS

### A.    Section 2254 Habeas Petitions

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of their confinement and seeking "immediate release or a speedier release from that imprisonment." See Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973); Leamer v. Fauver, 288 F.3d 532, 542–44 (3d Cir. 2002).  A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a).  Claimed violations of state law, standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension.  See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Furthermore, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must have exhausted the remedies available to them in the courts of the state.  See 28 U.S.C. § 2254(b)(1)(A).

These same principles that limit habeas relief to errors of a constitutional dimension also require federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts during state criminal proceedings.  There are two critical components to this deference mandated by Section 2254.

First, with respect to legal rulings by state courts, habeas relief is unavailable to a petitioner for any claim that has been adjudicated on its merits in state court unless it can be

shown that the state court decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see id. § 2254(d)(1); or (2) was "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2).  Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts.  See Rice v. Collins, 546 U.S. 333, 338–39 (2006) (concluding that state court's decision on petitioner's peremptory challenge based on Batson v. Kentucky, 476 U.S. 79 (1986), "was not an unreasonable determination of the facts in light of the evidence presented to the state court"); see also Warren v. Kyler, 422 F.3d 132, 139–40 (3d Cir. 2005) (determining that state court's decision to apply presumption in the applicable version of 42 Pa. C.S. § 9714 was not "an objectively unreasonable application of clearly established federal law"); Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) ("We agree with the District Court that the state court decisions are not contrary to clearly established federal law.").

In addition, the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous.  See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made during criminal proceedings.  See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam) (explaining that under the

10

applicable standard, "we have not the slightest hesitation in saying that the trial court's

conclusion as to [the defendant's] competency was fairly supported by the record" (citation and

internal quotation marks omitted)).  This principle applies to factual findings made both by the

state trial court and state appellate courts. See Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir.

2006) ("Generally, federal courts defer to state appellate court determinations of fact.").  Thus,

this Court may not reassess credibility determinations made by the state courts and must give

equal deference to both the explicit and implicit factual findings made by the state courts.  See

Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) ("[W]e must provide the same presumption

of correctness required by § 2254(e)(1) to the state courts' implicit factual findings as we provide

to express findings of the state courts." (citing Campbell v. Vaughn, 209 F.3d 280, 285–86 (3d

Cir. 2000))).  Applying this standard of review, federal courts may only grant habeas relief

whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made

an unreasonable finding of fact."  See Rolan, 445 F.3d at 681.

    **B.      Ineffective Assistance of Counsel Claims**

    The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his

defence."  See U.S. Const. amend VI.  However, "[t]hat a person who happens to be a lawyer is

present at trial alongside the accused . . . is not enough to satisfy [this] constitutional command."

See Strickland v. Washington, 466 U.S. 668, 685 (1984).  Rather, "[t]he Sixth Amendment

recognizes the right to the assistance of counsel because it envisions counsel's playing a role that

is critical to the ability of the adversarial system to produce just results."  See id.  For that reason,

the Supreme Court "has recognized that 'the right to counsel is the right to the effective

11

assistance of counsel.'"  See id. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

To show that a petitioner was denied the effective assistance of counsel, they must satisfy a two (2)-prong standard, as set forth by the Supreme Court in Strickland.  Under the first prong of the Strickland standard, a petitioner must show that "counsel's performance was deficient."  See id. at 687.  This requires a showing that "counsel's representation fell below an objective standard of reasonableness."  See id. at 687–88; Williams v. Taylor, 529 U.S. 362, 390–91 (2000).  Indeed, "[c]ounsel's performance is deficient only "when counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  See McKernan v. Superintendent Smithfield SCI, 849 F.3d 557, 564 (3d Cir. 2017) (quoting McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 102 (3d Cir. 2012)).  This requires the "reasonably effective assistance" of counsel:

> [Courts] consult no checklist, as no catalog can "satisfactorily take [into] account . . . the range of legitimate decisions regarding how best to represent a criminal defendant."  Id. at 688–89[.]  That is why [the courts'] review of counsel's performance is "highly deferential," United States v. McCoy, 410 F.3d 124, 135 (3d Cir. 2005), for "it is all too easy for a court" to find a certain act or omission unreasonable after the defense ultimately proves unsuccessful, Strickland, 466 U.S. at 689[;] see also Rolan[, 445 F.3d at 681–82] ("[C]ounsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better.").

See Rogers v. Superintendent Greene SCI, 80 F.4th 458, 462 (3d Cir. 2023).

Under the second prong of the Strickland standard, a petitioner must show that counsel's "deficient performance prejudiced [his] defense."  See 466 U.S. at 687.  "Simply 'show[ing] that the errors had some conceivable effect on the outcome of the proceeding' is not enough, as '[v]irtually every act or omission of counsel would meet that test.'"  Rogers, 80 F.4th at 464 (quoting Strickland, 466 U.S. at 693).  This prong requires a "showing that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." See id. Thus, the petitioner must show that there is "a reasonable probability that," if not for counsel's errors, "the result of the proceeding would have been different." See id. at 694. A reasonable probability, in turn, "is a probability sufficient to undermine confidence in the outcome." See id. This "requires a substantial, not just conceivable, likelihood of a different result." See Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

A habeas petitioner must satisfy both prongs and a failure to do so is fatal to his Strickland claims. See 466 U.S. at 687 (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable"); Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). Additionally, a court is permitted to choose which prong of the Strickland standard to apply first, and a court may reject an ineffective assistance claim on the ground that the petitioner was not prejudiced without ever addressing whether counsel's performance was deficient. See 466 U.S. at 697. In other words:

> Although [the Supreme Court has] discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which [the Supreme Court expects] will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

See id.

For purposes of AEDPA, see 28 U.S.C. § 2254(d)(1), the "clearly established Federal law" as to an ineffective assistance of counsel claim is the two (2)-prong standard established by

13

Strickland.  See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (citation omitted); Cullen, 563 U.S. at 189 (explaining that "[t]here is no dispute that the clearly established federal law" for an ineffective assistance of counsel claim under the Sixth Amendment is Strickland).  Although the Pennsylvania Supreme Court uses slightly different language than that of the United States Supreme Court to address ineffective assistance of counsel claims, Pennsylvania's standard is consistent with the federal standard set forth in Strickland.  See Werts v. Vaughn, 228 F.3d 178, 202–04 (3d Cir. 2000) (holding that a Pennsylvania state court applying Pennsylvania's ineffective assistance of counsel standard did not contradict Strickland); Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204 and noting that the Third Circuit has "previously ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland")).[8]

Finally, it bears emphasis that "[s]urmounting Strickland's high bar is never an easy task," see Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable under [Section] 2254(d) is all the more difficult." See Harrington v. Richter, 562 U.S. 86, 105 (2011).  Accordingly, when the state court has decided an ineffective assistance of counsel claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  Further, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

---

[8]  The record establishes that the state courts applied Pennsylvania's standard to Sebastian's PCRA claims of ineffective assistance of counsel. See (Doc. Nos. 15-29, 15-31); Sebastian II, 2022 WL 17975378, at *2–3.

See id. (citation omitted).  This has been referred to by the Supreme Court as "'doubly deferential.'"  See, e.g., Cullen, 563 U.S. at 190 (explaining that "[w]e take a highly deferential look at counsel's performance ... through the deferential lens of Section 2254(d)" (citation, internal citation, and internal quotation marks omitted)).[9]  The Court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate.  See Dunn v. Reeves, 594 U.S. 731, 739 (2021); Knowles, 556 U.S. at 123 (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)).  Thus, the Court may only grant habeas corpus relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision."  See Dunn, 594 U.S. at 739–40 (quoting Harrington, 562 U.S. at 101).

## III.    DISCUSSION

As indicated above, Sebastian presents four ineffective-assistance-of-counsel claims in support of his request for habeas relief.  The Court will address each claim in turn.

### A.    Failure to Properly Attack the Minor Victim's Reputation in the Community for Untruthfulness

Sebastian first argues that his trial counsel rendered ineffective assistance when she failed to properly attack the Minor Victim's credibility by properly preparing her mother ("Mother") to testify regarding the Minor Victim's reputation for untruthfulness in the community.  See (Doc. No. 1 at 8–9).  The CCP, in concluding that this claim lacked arguable merit, stated:

> [Sebastian] cite[d] no binding authority to support his argument that [trial] counsel had a duty to investigate the character of a complainant in a child sexual abuse case, particularly when, as here, the defense elected to present objective evidence that

---

[9]  Although inapplicable to the instant case, where a petitioner's claimed violations of federal law were not adjudicated on the merits by the state courts, AEDPA's deferential standard, see 28 U.S.C. § 2254(d), does not apply, and the district court reviews the petitioner's claims de novo. See Cone v. Bell, 556 U.S. 449, 472 (2009) (citations omitted); Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012).

cast doubt upon the plausibility of the assault allegations. [Sebastian] also fail[ed] to account for the strong possibility that the jury would have reacted negatively to an overt declaration by [Mother] that [she] chose to believe the account of her boyfriend over that of her own biological daughter. See [sic] Transcript of Proceedings, 41:3–4 ([Trial counsel] testifie[d] that "I don't know that I would want . . . reputation evidence coming from [Victim's] mother").

[Sebastian's] first issue also lacks support in the record. [Trial counsel] testified at the PCRA hearing that [Mother] never informed her of [the Minor] Victim's [poor reputation for] truthfulness even though [trial counsel] and [Mother] spoke for "a couple of hours" before trial. Transcript of Proceedings, 41:17–18. Rather, [Mother] only stated that she and [Appellant] regarded [the Minor] Victim as a liar, it was only at the PCRA hearing that [Mother] testified to [the Minor] Victim's poor reputation in the community for truthfulness. Transcript of Proceedings, 7:17–8:4; 41:23-24. Moreover, [trial counsel] was aware that [the Minor] Victim's grandmother, with whom [the Minor] Victim lived [at the time of trial,] believed [the Minor] Victim's allegations. Transcript of Proceedings, 41:19–20. Thus, [trial counsel] did not present reputation evidence because she "didn't have any information based on her discussions with [Mother] that [laid] an appropriate foundation" to introduce such evidence. Transcript of Proceedings, 43:8–10. The Court credits [trial counsel's] testimony on this point. Therefore, the Court finds that [Sebastian's] first argument does not present an issue of arguable merit because [trial counsel] could not have been expected to present evidence when she was justifiably unaware of a foundation for the same. See [sic] [Commonwealth v. Washington, 927 A.2d 586, 603 (Pa. 2007)] ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").

See (Doc. No. 15-29 at 6–7).

On appeal, the Superior Court "agree[d] with the [CCP] that this claim merit[ed] no relief," explaining as follows:

Trial counsel testified at the PCRA hearing that she "didn't have any information based upon [her] discussions with [Mother]" that [the Minor] Victim had a reputation for untruthfulness. N.T., 10/19/2021, at 43. Trial counsel testified that she did not know "that anybody else other than [Mother] and [Sebastian] thought [the Minor Victim] was a liar." Id. at 41. Trial counsel was unsure that reputation evidence from Mother would have been beneficial to [Sebastian]'s trial. Id. ("I don't know if I would want that reputation evidence from her mother."). Trial counsel also testified that she knew that [the Minor] Victim went to live with her grandmother after [the Minor] Victim reported the abuse and that [the] grandmother believed [the Minor] Victim was truthful. Id. at 41-43. Moreover, trial counsel determined that it was "better to present evidence of the surrounding circumstances [to] impeach the child's credibility rather than [] directly calling the victim a liar" because trial counsel believed "that attacking [] credibility should not be done

16

directly and harshly with a child." Id. at 40. Instead, trial counsel opined that it was better to "actually use an objective determination for why [] sexual assault was unlikely" because, to trial counsel, it was "inconceivable . . . sexual contact happened with so many people in the house and in the bed next to where her mother slept [with the Minor Victim's younger] brother." Id.

Examining the certified record and applicable law, we conclude that trial counsel employed a reasonable trial strategy, which avoided the introduction of Mother's testimony about [the Minor] Victim's reputation in the community for untruthfulness. This strategy was not so unreasonable that no competent lawyer would have chosen it. Trial counsel made an informed choice which, at the time the decision was made, reasonably considered and attempted to advance and protect [Sebastian]'s interests. Thus, we deem counsel's assistance constitutionally effective after concluding the particular course chosen by counsel had some reasonable basis designated to effectuate [Sebastian]'s interests. As set forth above, we are simply not permitted to employ hindsight in evaluating whether other alternatives were more reasonable.

Finally, we conclude that presenting evidence that [the Minor] Victim had a reputation for untruthfulness would not have offered [Sebastian] a significantly greater chance of success and [he] has not demonstrated prejudice. The jury observed Mother testifying for the defense and the Commonwealth referenced that fact in closing when it argued that "Mother no longer resides with her daughter[, the Minor Victim,] but has continued to talk to and engage in a relationship with the man [who] alleged[ly] abused her" and "[c]learly, [the Minor Victim's] mother doesn't believe her." N.T., 6/6/2019, at 144-146. As such, the jury was aware that Mother believed [the Minor] Victim was untruthful. Having found that trial counsel had a reasonable basis for not eliciting reputation evidence about [the Minor] Victim under [Pennsylvania Rule of Evidence] 608, [Sebastian]'s first issue merits no relief.

See Sebastian, 2022 WL 17975378, at *5–6 (some alterations in original).

Sebastian argues that the state courts unreasonably applied Strickland because he believes that trial counsel had a duty to question Mother "in more detail to attempt to divulge whether [she] had further information to meet the specific criteria of [Pennsylvania Rule of Evidence 608(a)]" concerning the admissibility of the Minor Victim's reputation in the community for untruthfulness. See (Doc. No. 1 at 9). He asserts that trial counsel "admitted that tha [sic] reputation evidence would have been helpful if she had been provided [sic] the proper foundation." See (id. at 10 (citing (Doc. No. 15-9 at 43))). He also contends that trial counsel

17

"chose a different defense which obviously did not serve [his] best interest as it lead [sic] to the conviction and a sentence of 18–36 years in prison."  See (id. (citations omitted)).  As explained below, Sebastian's arguments are meritless.

Preliminarily, the Court notes that Sebastian never asserts at any point in his petition that the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented during the trial and the evidentiary hearing on his PCRA petition.  See (id. at 9–10).  As such, he may obtain habeas relief in this case only if he can show that the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  See 28 U.S.C. § 2254(d)(1).  Moreover, because the state courts determined that his ineffective-assistance-of-counsel claims, including the instant claim, lacked merit, Sebastian must overcome the high level of deference this Court must apply to his trial counsel's actions as well as the state courts' determinations that trial counsel's actions were constitutionally adequate.  See Dunn, 594 U.S. at 739.  Sebastian fails to make such a showing here for several reasons.

First, Sebastian fails to show that the state courts' decisions were contrary to clearly established Federal law because, as the CCP explained, he does not cite to any case holding that trial counsel has a duty to investigate a child victim's character for truthfulness in the community, especially under circumstances in which trial counsel "elected to present objective evidence that cast doubt upon the plausibility of the assault allegations."  See (Doc. No. 15-29 at 6).  Second, even if trial counsel had such a duty, the state courts reasonably concluded that trial counsel acted appropriately in not inquiring about the Minor Victim's reputation in the community for untruthfulness based on the information she had at the time of trial.  As the Superior Court explained, during trial counsel's interview with Mother, which lasted "a couple

18

of hours," Mother never informed trial counsel that anyone other than her and Sebastian thought that the Minor Victim was a liar.  See Sebastian II, 2022 WL 17975378, at *5; (Doc. No. 15-9 at 41).  Moreover, trial counsel stated that she knew that the Minor Victim's grandmother, with whom the Minor Victim was residing, thought that the Minor Victim was telling the truth.  See Sebastian II, 2022 WL 17975378, at *5; (Doc. No. 15-9 at 41).  Thus, contrary to Sebastian's assertion, trial counsel lacked information upon which she could lay a proper foundation to ask Mother about the Minor Victim's reputation for truthfulness (or untruthfulness) in the community.  See (Doc. No. 15-9 at 43 ("I could have used the mother for reputation evidence if I had laid an appropriate foundation.  I didn't have any information based on my discussions with [Mother] that did lay an appropriate foundation.  Indeed, I knew that the grandmother knew that she was telling herself that [the Minor Victim] was a truthful person."); see also Thomas v. Varner, 428 F.3d 491, 499–500 (3d Cir. 2005) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Third, the state courts reasonably determined that trial counsel "employed a reasonable trial strategy, which avoided the introduction of Mother's testimony about [the Minor] Victim's reputation in the community for truthfulness."  See Sebastian II, 2022 WL 17975378, at *6.  Sebastian falls far short of showing that "every 'fairminded jurist' would agree that every reasonable lawyer would have" chosen to question Mother about the Minor Victim's reputation for untruthfulness in the community.  See Dunn, 594 U.S. at 739–40 (quoting Harrington, 562 U.S. at 101).

Fourth, and finally, the state courts reasonably determined that the outcome of Sebastian's trial would not have been different had trial counsel elicited testimony from Mother that the Minor Victim had a reputation for dishonesty in the community. See Sebastian II, 2022 WL 17975378, at *6. Contrary to Sebastian's assertion that "[t]rial counsel admitted that the reputation evidence would have been helpful if she had . . . provided the proper foundation," see (Doc. No. 1 at 11), trial counsel testified during the PCRA evidentiary hearing that she believed that attacking a child's credibility "should not be done directly and harshly." See (Doc. No. 15-9 at 40). Instead, in trial counsel's judgment, "it's better to present evidence of surrounding circumstances that impeach the child's credibility rather than by directly calling the victim a liar." See (id.). Furthermore, trial counsel testified that "evidence that the [Minor Victim] had a reputation for dishonesty" was "possibly" helpful in attacking her credibility, and counsel explained that she "didn't know that [she] would want that reputation evidence [coming] from [the Minor Victim's] mother" in any event. See (id. at 41 (emphasis added)). Overall, trial counsel's testimony contradicts Sebastian's assertion that this reputation evidence would have helped his case.

In addition, Sebastian's sole argument relating to Strickland's prejudice prong amounts to his belief that he can demonstrate prejudice because the jury convicted him. See (Doc. No. 1 at 10 ("Counsel chose a different defense which obviously did not serve petitioner's best interest as it lead [sic] to the conviction [sic] and sentence of 18–36 years in prison." (citations omitted))). Such an argument is wholly insufficient to establish prejudice under Strickland because it would permit any defendant convicted of an offense to point to their conviction as proof of prejudice. Thus, the Supreme Court requires a defendant like Sebastian who challenges their conviction to go beyond merely pointing to their conviction to show prejudice and demonstrate that absent

20

counsel's error, "there is a reasonable probability that . . . the factfinder would have had a

reasonable doubt respecting guilt." See Strickland, 466 U.S. at 695.  And, here, as the state

courts reasonably concluded, Sebastian does not show that even if trial counsel had questioned

Mother about the Minor Victim's reputation for untruthfulness in the community, there is a

reasonable probability that the jury would have had a reasonable doubt as to his guilt.  Therefore,

the Court will deny this first habeas claim.

>    **B.      Failure to Cross-Examine the Minor Victim on Inconsistencies Between Her Statements to Police and Her Trial Testimony**

Sebastian argues that his trial counsel was constitutionally ineffective when she failed to

cross-examine the Minor Victim on "several compelling inconsistencies between her original

statements to the police and the testimony she ultimately provided in the trial." See (Doc. No. 1

at 10).  The CCP rejected his second claim as follows:[10]

> [Trial counsel] made a reasonable strategic judgment not to impeach [the Minor]
> Victim using [her] inconsistent statements regarding the number of times oral sex
> occurred.  [Trial counsel] testified that, after reviewing the CAC interview in which
> [the Minor] Victim disclosed [Sebastian]'s abuse, she "didn't see the basis for
> impeaching [the Minor] Victim."  Transcript of Proceedings, 55:16–21.  In
> addition, [trial counsel] made the sound judgment that "attacking [the Minor
> Victim's] credibility should not be done directly and harshly" because of [her]
> youth.  Transcript of Proceedings, 40:21-25.  [Trial counsel] had a reasonable basis
> to impeach [the Minor] Victim's credibility by "present[ing] evidence of
> surrounding circumstances that" cast doubt upon [the Minor] Victim's version of
> events.  Transcript of Proceedings, 40:21–25.  As the Superior Court has
> recognized, "[c]ross-examination of a child victim is fraught with peril and admits
> of no bright-line rules" because "[e]ach question involves risk; the advocate treads
> the cliff's edge lest he be seen as badgering."  Commonwealth v. Vargas, No. 504
> WDA 2013, 2014 WL 10965251, at *5 (Pa. Super. Apr. 29, 2014).  The record

---

[10]  In his habeas petition, Sebastian does not identify the inconsistent statements he believes his
trial counsel should have used to impeach the Minor Victim.  The CCP indicated that Sebastian
claimed that his trial counsel was ineffective because she did not "confront[ Minor] Victim with
prior inconsistent statements regarding the number of times [Sebastian] performed oral sex upon
[the Minor] Victim . . . ."  See (Doc. No. 15-29 at 7).  As such, the Court construes Sebastian's
petition as also referencing the Minor Victim's statements and testimony regarding the number
of times she and Sebastian engaged in oral sex.

reflects that, in the circumstances of the case, [trial counsel] made a reasonable strategic judgment not to conduct a more aggressive cross-examination of [the Minor] Victim. Thus, [Sebastian] has not met his burden to show [trial counsel] lacked a reasonable basis for her cautious approach to impeaching [the Minor] Victim.

In addition, the Court rejects [Sebastian]'s claim that [trial counsel] should have presented testimony from [Mother] contradicting [the Minor] Victim's statement that [Mother] "figured . . . out" that abuse was occurring. The record shows [trial counsel] elicited testimony from [Mother] establishing that [she] never witnessed or suspected abuse. N.T. 103:13–110:18. Nevertheless, [Sebastian] complains [trial counsel] should have elicited testimony by [Mother] that specifically contradicted [the Minor] Victim's statement that [Mother] "figured . . . out" that abuse was occurring. However, [Sebastian] cannot carry his burden to show a reasonable probability of a different trial outcome had [trial counsel] taken the course of action he now suggests. See [Commonwealth v. Spotz, 84 A.3d 294, 311 (Pa. 2014)]. Accordingly, [Sebastian]'s argument fails because [Sebastian] cannot prove he was prejudiced by [trial counsel]'s direct examination of [Mother].

See (Doc. No. 15-29 at 7–8).

The Superior Court, after reviewing the Minor Victim's CAC interview, agreed with the

CCP that Sebastian was not entitled to PCRA relief on his second claim, stating as follows:

In the CAC interview, [the Minor] Victim described the manner and frequency with which [Sebastian] performed oral sex upon her. She claimed [Sebastian] took her pants off and used his tongue on her vagina. [The Minor] Victim told the CAC interviewer that it had happened "before" and "more than once." [The Minor] Victim stated that the abuse occurred on a couch in the living room, in Mother's room, and in her brothers' room. At trial, [the Minor] Victim testified regarding a specific incident of oral sex in her brother's bedroom. See N.T., 6/6/2019, at 47. She also testified that, over the course of approximately a year and a half, [Sebastian] performed oral sex upon her "more than ten" times on her bed and "more than ten" times on her Mother's bed. Id. at 50. At the PCRA evidentiary hearing, trial counsel believed that she "didn't have the basis" to impeach [the Minor] Victim because the CAC and trial statements were not inconsistent. N.T., 10/16/2021, at 44; see also id. at 57 ("The CAC interviews are what [trial counsel] use[s] for impeachment" and trial counsel "didn't see the substance for impeachment.").

We agree. In her CAC interview, [the Minor] Victim initially said that [Sebastian] performed oral sex upon her "before" and that it was "more than once." At that time, however, she did not offer a specific number of times that the abuse occurred. At trial, [the Minor] Victim testified that oral sex occurred "more than ten" times. This testimony did not contradict the answers [the Minor] Victim provided in her

22

prior CAC interview.  Therefore, it was reasonable for trial counsel to not use the CAC interview in an effort to impeach [the Minor] Victim's trial testimony on the basis of alleged inconsistencies.  Moreover, while trial counsel did not specifically question Mother about whether she had "figured out" that abuse was occurring, such questioning would have been merely cumulative of Mother's testimony that she was not aware of any inappropriate touching between [Sebastian] and [the Minor] Victim despite what she described as an open line of communication between herself and [the Minor] Victim.  See N.T., 6/6/2019, at 106-107.  Trial counsel made reasonable decisions to advance and protect [Sebastian]'s interests and was not so unreasonable that no competent lawyer would have chosen the same defense.  As such, [Sebastian]'s second issue fails.

See Sebastian II, 2022 WL 17975378, at *7.

In his second habeas claim, Sebastian challenges the state-courts' resolution of two aspects of trial counsel's conduct.  First, Sebastian asserts that trial counsel failed to impeach the Minor Victim regarding inconsistencies between her initial statements to law enforcement and her trial testimony.  See (Doc. No. 1 at 10–11).  He claims that trial counsel testified during the PCRA hearing that she knew there were inconsistencies between the Minor Victim's "original statements and trial testimony but counsel stated that the [Children's Advocacy Center ("CAC")] report provided corrected discrepancies."  See (id. at 11).  He also claims that despite trial counsel admitting that attacking the Minor Victim's credibility with these statements would have been helpful, trial counsel "simply chose not to do so."  See (id.).

Second, Sebastian asserts that trial counsel was ineffective because she failed to properly challenge the Minor Victim's trial testimony that his sexual abuse stopped once Mother became aware of it.  See (id.).  Sebastian claims that trial counsel should have elicited testimony from Mother, as Mother testified during the PCRA hearing, that the Minor Victim's testimony about how the sexual abuse stopped was untrue.  See (id.).  By failing to question Mother about this issue, Sebastian contends that trial counsel "dropped the ball on this aspect of potential impeachment of the victim," and instead employed a strategy that "show[ed] more consideration

23

to the [Minor Victim's] feelings . . . than protecting her own client's best interest." See (id. at 11, 12 (citations omitted)).

As with his first habeas claim, Sebastian second habeas claim fails because he has not overcome the high level of deference this Court must apply to his trial counsel's actions as well as the state courts' determinations that trial counsel's actions were constitutionally adequate. First, Sebastian's claim that the state courts unreasonably applied Strickland in assessing trial counsel's failure to cross-examine the Minor Victim is unavailing. Regarding the Minor Victim's testimony about the number of incidents of oral sex versus her initial statements to police, Sebastian ignores a critical aspect of the Minor Victim's initial statements. As shown by the affidavit of probable cause attached to Sebastian's criminal complaint, the Minor Victim's initial statement relating to oral sex occurred during her CAC interview and all the affidavit reflected was the affiant's observations and recollection from that interview. See (Doc. No. 15-1 at 5–6). The Superior Court reviewed that interview and explained that, contrary to the affiant's statement that the Minor Victim indicated that she and Sebastian engaged in oral sex only once, the Minor Victim stated during her CAC interview that oral sex occurred "more than once" and did not "offer a specific number of times that the abuse occurred." See Sebastian II, 2022 WL 17975378, at *7. Thus, the Superior Court reasonably determined that the Minor Victim's trial testimony was not inconsistent with statements she made during her CAC interview and, as such, trial counsel's decision not to impeach the Minor Victim's trial testimony with her CAC interview statements was reasonable.[11]

_____

[11] As trial counsel pointed out during her PCRA hearing testimony, any inconsistency would have been with the affiant's description of what the Minor Victim stated during her interview, rather than what the Minor Victim said. See (Doc. No. 15-9 at 44 ("Well, in terms of impeachment, I would not have used [the affiant's] description of what [the Minor Victim] said [during her interview] because [the affiant] had watched the same CAC interview that I had. I

Second, as to counsel's precise questions to Mother about whether the Minor Victim's testimony about whether Sebastian's sexual abuse stopped after she "figured out" that the abuse was occurring, Sebastian similarly fails to meet his burden to show an unreasonable application of Strickland. The state courts reasonably concluded that a specific question to Mother about this testimony would have been "merely cumulative" of Mother's other testimony that she was unaware of any abuse. See Sebastian II, 2022 WL 17975378, at *7. This conclusion is neither contrary to nor an unreasonable application of Strickland. Accordingly, the Court will deny Sebastian's second habeas claim.

> ### C. Failure to Impeach the Minor Victim with Her Prior History of Animosity Toward Sebastian Because He Exposed Her Inappropriate Cellphone Activity

For his third claim, Sebastian argues that trial counsel was ineffective because she did not "attack the [Minor Victim] with [her] prior history of . . . animosity toward [him]" insofar as he "expos[ed]" the Minor Victim's "inappropriate cellphone activity" with a young male, T.R. See (Doc. No. 1 at 12–14, 16). Sebastian asserts that he reported to Mother that he observed "pictures of [T.R.] exposing himself" on the Minor Victim's cellphone "weeks before" the Minor Victim alleged that Sebastian sexually abused her. See (id. at 12). Although Mother never saw the pictures, she and Sebastian disciplined the Minor Victim over them, which Sebastian claims caused the Minor Victim to become "very upset with [him] and [Mother]" and ultimately led to the Minor Victim "pressing these false charges against [him]." See (id. at 12, 13, 16).

The CCP concluded that this claim lacked merit, explaining as follows:

At the PCRA Hearing, [trial counsel] testified that, after investigation, she believed the objective defense presented at trial was stronger than a defense based on the

---

would be looking to impeach [the Minor Victim] on what she in fact said in the CAC interview.")).

theory that [the Minor] Victim falsely accused [Sebastian] because he imposed discipline over her relationship with [T.R.]  Transcript of Proceedings, 49:23–50:24.  [Trial counsel] discussed T.R.'s relationship with [the Minor] Victim with both [Sebastian] and [Mother] and learned that [the Minor] Victim allegedly had received a photograph of T.R.'s genitals on her cell phone.  Transcript of Proceedings, 49:2–16.  However, only [Sebastian] reported seeing the explicit photograph to [trial counsel].  Transcript of Proceedings, 49:10–16.  [Trial counsel] also testified that she had been unable to locate T.R. on social media.  Transcript of Proceedings, 49:19–22.  Accordingly, [trial counsel] made the reasonable strategic decision that the objective defense actually presented at trial was "a better[,] . . . more substantive defense" than a defense requiring discussion of [the Minor] Victim's relationship with T.R.  Transcript of Proceedings, 49:23–25.  [Sebastian] has not shown that the presentation of the defense requiring discussion of [the Minor] Victim's relationship with T.R. "offered a potential for success substantially greater than the course actually pursued," so his third argument fails the "reasonable basis" prong of the ineffectiveness test.  See Spotz, 84 A.3d at 311–12.

See (Doc. No. 15-29 at 9–10).

The Superior Court agreed with the CCP:

At the PCRA evidentiary hearing, [Sebastian] testified that he purchased [the Minor] Victim a cellular telephone.  N.T., 10/16/2021, at 28.  He claimed that he saw three photographs of a young man with his genitals exposed on [the Minor] Victim's cellular telephone.  Id. at 27.  [Sebastian] told Mother about the alleged photographs.  Id. at 28.  Mother testified, however, that she did not see the photographs exchanged between [the Minor] Victim and the young man, described only as [T.R.]  Id. at 10-11.  [Sebastian] claimed that [the Minor] Victim deleted the photographs, [he] did not save the photos, send them to his cellular telephone, or keep [the Minor] Victim's cellular telephone.  Id. at 36.  Trial counsel testified that, in preparing [Sebastian]'s defense, she met with a member of her staff and Mother "and tried to find this guy [T.R.] on social media and [] couldn't find anybody that [] met [his] description[,]" so it "just sort of fizzled out[.]"  Id. at 49.  Ultimately, trial counsel testified:

> [Sebastian] told me that he had seen this picture and he had shown it to [Mother], [Mother] had not seen it.  We were speculating as to who this [T.R.] was.  We were trying to find him on social media.  But it just seemed like it was a rabbit hole and not worth pursuing.

Id. at 56.

Based upon the evidence available to trial counsel at the time, she made a reasonable decision not to pursue a defense that [the Minor] Victim retaliated against [Sebastian] by falsely reporting abuse after he allegedly discovered naked

photographs of a young man on her cellular telephone.[12]  Aside from [Sebastian]'s
bald allegation of [the Minor] Victim's alleged motive to seek revenge there was
simply no evidence to support [his] claim.  [Sebastian] and Mother do not dispute
that trial counsel attempted to locate this young man on social media to no avail.
At trial, counsel advocated a retaliation defense by eliciting testimony from [the
Minor] Victim showing that [Sebastian] imposed discipline upon her, that [the
Minor] Victim did not like it, and that she repeatedly told [Sebastian] that he was
not her father.  N.T., 6/6/2019, at 77-78.  In light of all of the foregoing, we deem
trial counsel's actions to be reasonable in light of the evidence available to her at
the time of trial.  [Sebastian] has not offered a potential for success substantially
greater than the course actually pursued by trial counsel.

See Sebastian II, 2022 WL 17975378, at *9 (footnote and some alterations in original).

Here, Sebastian asserts that the Superior Court's rationale for rejecting his third claim of

ineffective assistance of counsel was "objectively unreasonable" because the Superior Court

focused on trial counsel's inability to locate T.R. and her references to the animosity toward him

by the Minor Victim in her closing statements.  See (Doc. No. 1 at 13).  Sebastian believes that

"[w]hat was said in the closing arguments of the defense would not reasonably have had the

same impact when compared to the [T.R.] incident and all the trouble it caused between

[Sebastian, Mother, and the Minor Victim]."  See (id.).  He also believes that trial counsel did not

have to try and locate T.R. because Mother was available to testify that she saw "the text

messaging" between the Minor Victim and T.R., and the Minor Victim admitted that T.R. was a

friend of her friend, Samantha.  See (id. at 14).

---

12  We note that [Sebastian] does not contend that trial counsel was ineffective for failing to call
the young man as a trial witness, for failing to obtain the [Minor] Victim's telephone records,
and/or failing to conduct a more extensive forensic search of [the Minor] Victim's cellular
telephone for the purportedly deleted naked photographs.

Sebastian's arguments misstate the record in this case. In the first instance, although trial counsel informed the jury during her closing argument that they should consider whether the Minor Victim lied about Sebastian's sexual abuse to "get rid of [her] stepfather," see (Doc. No. 15-10 at 137:11–13), the Superior Court did not focus on trial counsel's closing statement at all when determining that she had a reasonable basis to not pursue a defense based on the alleged incident regarding Sebastian finding T.R.'s explicit picture on the Minor Victim's cell phone. See Sebastian II, 2022 WL 17975378, at *9. Instead, the Superior Court accurately pointed out that trial counsel "elicit[ed] testimony" from the Minor Victim about how, inter alia, she disliked Sebastian imposing discipline on her, and how she told him that he was not her father. See id.[13]

---

[13] Trial counsel elicited the following testimony from the Minor Victim at trial:

Q     Did [Sebastian] ever discipline you?
A     Yes.
Q     And what would he do to discipline you?
A     Not let me go places.
Q     . . . And would he discipline you for things like talking back to your mom?
A     Yeah.
Q     Was it important, in your opinion, to your mom and to [Sebastian] that you be respectful towards them?
A     Yes.
Q     So would you be punished if you weren't?
A     If I wasn't disrespectful?
Q     If you were not respectful.
A     Yeah.
Q     Were you unhappy when [Sebastian] would discipline you?
A     Yeah
Q     Did you ever say to him you're not my father?
A     Yeah.
Q     Did you say that pretty often?
A     M-hmm.

See (Doc. No. 15-10 at 77:9–78:3). The Court also notes that trial counsel questioned Mother about how the Minor Victim responded if Sebastian spoke to her about "something that . . . parents wouldn't like in a child," and Mother testified that the Minor Victim would "come very disrespectful towards him and would not follow—would not follow rules, would tell him that he's not her father, that she—that he's not supposed to tell her what to do and bad mouth him,

Secondly, Mother never testified that she saw any messages between T.R. and the Minor Victim.  Instead, when the CCP questioned Mother during the PCRA evidentiary hearing, she testified as follows:

> Q    And did you see anything yourself on the phone concerning an interaction with [T.R.]?
>
> A    I didn't – Photos and stuff like that.
>
> Q    Conversations?  Text messages?  Messenger-type stuff?
>
> A    I know they were talking for a good bit regarding, like, hooking up and going with Samantha on the weekend and meeting up.
>
> THE COURT: The question was, did you see any conversations or text messages on the [Minor V]ictim's cellphone.
>
> THE WITNESS: No, not between [T.R.] and her, no.
>
> THE COURT: You never reviewed any of those text messages?
>
> THE WITNESS: No.
>
> THE COURT: All right.  Next question.
>
> BY [COUNSEL]:
>
> Q    Did you see any text messages between [the Minor Victim] and Samantha?
>
> A    That I did not, no.
>
> Q    Okay.  Did you see any kind of specific messages concerning Samanta and/or [T.R.] on [the Minor Victim's] phone yourself?
>
> A    No.

---

talk dirty to him, use the F word."  See (id. at 110:7–12).  Moreover, it appears that Sebastian attempted to testify about something related to his discipline of the Minor Victim pertaining to her use of her cell phone, see (id. at 123:11–15 (Q[.] Now, in your relationship in the home with [the Minor Victim], did you ever scold her or discipline her?  A[.]  I didn't like scold her, but when she did things on her cell phone, she would do all sorts of bad things.  Like, for example . . . . .."), only to have the prosecutor object and the trial court sustain the objection.  See (id. at 123:16–17).

Q        Did you see any Facebook or other social media entries of [the Minor Victim] or of [T.R.] on her cellphone?

A        Other than his profile for Facebook.

Q        When you say his profile, whose profile?

A        [T.R.]'s Facebook verified that was the right person that [Sebastian] was talking about.

Q        And did you find that on her phone?

A        I found it on her phone.

See (Doc. No. 15-9 at 11:2–12:4). As illustrated by this testimony, Mother testified that she located [T.R.]'s profile on the Minor Victim's phone, but she explicitly stated that she did not observe any messages between T.R. and the Minor Victim.

Putting aside Sebastian's misstatements in his petition, the Court concludes that Sebastian fails to meet his burden to demonstrate that the state courts' conclusions rejecting his third habeas claim were contrary to or an unreasonable application of Strickland. Sebastian falls well short of establishing that "every 'fairminded jurist' would agree that every reasonable lawyer" would have pursued a defense that the Minor Victim lied about Sebastian's sexual abuse because of the discipline she received after he allegedly found T.R.'s explicit pictures on her cell phone instead of the defense trial counsel pursued at trial, which included evidence and argument that the Minor Victim lied because she did not like Sebastian disciplining her. See Dunn, 594 U.S. at 739 (quoting Harrington, 562 U.S. at 101). Accordingly, the Court will also deny Sebastian's third habeas claim.

**D.      The Cumulative Effect of Trial Counsel's Alleged Errors**

For his fourth and final claim, Sebastian argues that even if one of his first three habeas claims is insufficient to warrant habeas relief, the Court should grant him habeas relief because

30

the cumulative effect of counsel's alleged errors deprived him of effective counsel and a fair

trial.  See (Doc. No. 1 at 16).  As for this type of claim:

> The cumulative effect of multiple errors may warrant habeas relief.  [Marshall v. Hendricks, 307 F.3d 36, 94 (3d Cir. 2002).]  "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'"  [Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993))].  But to find cumulative error "requires the existence of 'errors' to aggregate.  Absent such errors by counsel, the cumulative error doctrine does not apply."  [Aponte v. Eckard, No. 15-561, 2016 WL 8201308, at *20 (E.D. Pa. June 3, 2016), report and recommendation adopted, 2017 WL 467633 (E.D. Pa. Feb. 3, 2017)].

See Haitos v. Hainsworth, No. 14-cv-00372, 2025 WL 2884815, at *7 (M.D. Pa. Oct. 9, 2025)

(internal footnotes replaced with citations).

In this case, as discussed supra, Sebastian has not shown that any of his ineffectiveness

claims have merit.  As such, his fourth claim of cumulative error fails because there are no errors

to accumulate.

### E.  Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability [("COA")], an

appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in

which the detention complained of arises out of process issued by a State court[.]"  28 U.S.C. §

2253(c)(1)(A).  A COA may issue only if the applicant has made a substantial showing of the

denial of a constitutional right.  See id. § 2253(c)(2).  When deciding whether to issue a COA

after a denying a Section 2254 petition on the merits, the Court applies the following standard:

"The petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  See Slack v. McDaniel, 529 U.S.

473, 484 (2000).

In this case, jurists of reason would not find the disposition of this case debatable, i.e., that Sebastian's claims do not warrant habeas relief because they are meritless. Accordingly, the Court will not issue a COA in this case.

## IV.   CONCLUSION

For the reasons stated above, the Court will deny Sebastian's Section 2254 habeas petition, decline to issue a certificate of appealability, deny the motions to compel compliance as moot, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania